### RICE v. HAMPTON.

### (91 S. E. 5.)

SALES—REMEDIES OF SELLER—ELECTION—RETAKING PROPERTY.—Under a contract which contained the ordinary provisions of a conditional sale of a piano giving the seller the right to retake possession to recover the purchase price, and also contained the ordinary provisions of a chattel mortgage given to secure a note for the purchase price, under which the seller could sell the piano at public sale and apply the proceeds to the payment of the note, the seller must elect whether to retake the piano under the conditional sale provisions or sell it under the mortgage provisions, and where he had taken possession and insured the piano as his own, though leaving it temporarily with the buyer subject to call under an agreement with the buyer, he could not thereafter sell it under the mortgage clause and recover the balance due on the price from the buyer.

Before WILSON, J., Union. Reversed.

---

FOOTNOTE.—Effect of retaking of property by seller on rights and remedies of parties to a contract of conditional sale, see note in L. R. A. 1916a, 915; bringing action for purchase price as a waiver by the vendor of the title and remedy clauses in a conditional sale contract, see note in L. R. A. 1916a, 925; election of remedies on breach of contract of conditional sale, see notes in 1 A. & E. Ann. Cas. 268, 16 A. & E. Ann. Cas. 1057, 32 L. R. A. 471.

Action by Evelina Rice, as administratrix of the estate of S. M. Rice, deceased, against Cardoza Hampton. Judgment for the plaintiff, and defendant appeals.

The contract on which the action was based was as follows: Union, S. C., April 2, 1912. For value received, I, Cordoza Hampton, residing at ——, promise to pay to S. M. Rice, E. U., or order, three hundred twenty-five dollars at Union, S. C., in —— installments, namely: Fifteen dollars on the signing of this note, for which I hold receipt, $8.33½ dollars on the per month till 191—, —— dollars on the —— day of ——, 191—. Paid for dollars on the —— day of ——, 191—, being the price of a standard style Moh— No. 105804, with interest from date at per cent. per annum.

And I agree that in default of payment of either of said installments at the time stated, then the full balance of this note remaining unpaid shall thereupon mature and immediately become due and collectable without further notice or demand. I also promise to pay all probating and recording fees attendant upon this note, if any. The said piano to remain the property of S. M. Rice, E. U., until it is paid for in full.

And I hereby agree not to remove said piano and to take good care of, and not to have it injured in appearance or otherwise, and be responsible for any damage to same by accident or otherwise; and in case of failure on my part to pay this note, or any part thereof at maturity, and if I move said property, it shall be constructive evidence of attempted fraud, and I shall be held accountable therefor same as in a case of breach of trust. I agree to forfeit any payments already made, and if none has been paid, and said —— has to be taken back, I will pay to S. M. Rice, E. U., the amount of ten dollars, as rent or hire for the use of same in consideration of failure to pay the whole amount. And I hereby authorize and empower the said S. M. Rice, E. U., or his agent, to enter the premises wherever said piano may

be found, and take and carry the same away, hereby waiving any action for trespass or damage thereof, and disclaiming any right of resistance thereto. The taking of the same back or claiming the whole purchase money is at the option of the said S. M. Rice, E. U. And if suit has to be brought for purchase money, and if failure to collect purchase money, said property to remain said Rice's with all above-mentioned privileges to recover same. And I do hereby agree that if the said S. M. Rice, E. U., is compelled to send agent or come himself to make collection more than once for each of above payments, I will pay the sum of one dollar for each trip thereafter.

And in order to better secure the payment of this note, I do hereby convey unto S. M. Rice, E. U., the following articles of personal property or other property, to wit:

The above described piano and * * *.

But on this special trust, that if I fail to pay the said debt and interest or any part thereof on the above specified day or days, then said S. M. Rice, E. U., or his agent, may seize said property and sell so much as may be necessary, by public auction, for cash, at once, without giving any notice in writing or otherwise, and apply the proceeds of such sale to the expenses of the seizure and sale, also ten per cent. for collector's fee, and then to the discharge of said debt, and interest on same, and pay any surplus to me; and I hereby waive all action for trespass, and disclaim all right of resistance against such seizure.

Given under my hand and seal this 2 day of May, A. D. 1912. Cardozia Hampton. [L. S.]. Witness, C. B. Blevin.

No agent is authorized to make any verbal or written contract otherwise than is contained in this note.

Appearing in margin:

I hereby agree that if this contract is paid in full by Jan. 1, 1913, to deduct ($35.00) thirty-five dollars,—No inter-

est will be charged until after Jan. 1, 1913. S. M. Rice.
E. U.

Name—Cardozia Hampton (col). Date of sale—5-2-12.
P. O.—Union, S. C. On whose place—Own. Distance
and direction from P. O.—. Name of article—Piano?
Amt. $325. How.to be paid—.

Personally appeared before me C. B. Blevins and made
oath that he saw the within named Cardozia Hampton and
his —— act sign, seal and deliver the within paper. C. B.
Blevins.

Sworn to and subscribed before me this 22 day of May,
1912.

I hereby appoint J. Hay Fant, sheriff, my agent, to col-
lect the within bill sale 11th Aug. 1913. Jno. E. Hamblin,
Attorney.

*Mr. Macbeth Young,* for appellant, cites: *As to election
of remedies:* 16 A. & E. Ann. Cas. 1054; 88 Ark. 99; 140
Ala. 335; 35 S. C. 572; 56 Fla. 116; 111 App. Div. (N. Y.)
785; 97 N. Y. S. 863; 190 N. Y. 572; 14 Fla. 180.

*Mr. John K. Hamblin,* for respondent, cites: 40 S. C.
530; 74 S. C. 451, 452, 453; 43 S. C. 40.

December 27, 1916.

The opinion of the Court was delivered by Mr. Chief
Justice Gary.

This is an action upon a written instrument purporting
to be a chattel mortgage or bill of sale, in which judgment
is demanded for a deficiency alleged to be due, after apply-
ing the proceeds arising from the sale of the property, to a
balance claimed by the plaintiff.

The defendant contends that it is not a chattel mortgage,
but an optional contract between the vendor and the vendee

wherein the vendor's remedies are set forth in the written instrument, and that the plaintiff, having proceeded against the property, is now estopped from recovering a money judgment.

By way of defense the defendant relies upon the following facts alleged in his answer:

"That after demand by the plaintiff in the spring or early summer of 1913 for the piano and its delivery to the plaintiff, the defendant herein was asked to keep the said piano, subject to delivery to drayman when called for, and defendant consented, and the plaintiff immediately took out insurance on the said piano and left same in the custody of the defendant, subject to call. The defendant then became the agent of the plaintiff, and so held the piano for plaintiff until January, 1915, when the drayman called for the same, and transported the same to the private residence of the plaintiff, that the defendant is informed and believes that the said piano was advertised for sale, and that it was alleged to have been sold at the private residence of the plaintiff, at an unusual hour, with no bidders, and the public not present, and that the so-called sale was not attended by any one save the agent and seller of the plaintiff, who is said to have made one bid at his own sale at or before 9 a. m."

The piano was sold at public outcry for $75, the only bid being made by W. J. Sarratt, who was agent and brother of the plaintiff, and was the auctioneer who sold the property. The plaintiff's family and the auctioneer were the only persons present at the sale.

The defendant contends that the sale was null and void, and that the delivery of the piano to the plaintiff in the spring or summer of 1913 estopped the plaintiff from resorting to any further remedies thereafter.

At the close of the plaintiff's testimony the defendant made a motion for a directed verdict, on the ground that the plaintiff had made an election, under the option con-

tained in the contract, to take the property back, and not to sue for the contract price. The motion was refused. The jury rendered a verdict in favor of the plaintiff, and the defendant appealed.

The contract (which will be reported) recites that the sum of $325 which the defendant promised to pay was the price of the piano therein mentioned, and that it was to remain the property of the plaintiff until it was paid for in full; that the defendant agreed to forfeit any payments already made if the piano had to be taken back, and would pay the plaintiff the amount of $10 for the use of same in consideration of failure to pay the whole amount. The following provisions are also in the contract:

"The taking of the same back, or claiming the whole purchase money, is at the option of the said S. M. Rice, E. U. And if suit has to be brought for the purchase money, and if failure to collect purchase money, said property to remain said Rice's, with all above mentioned privileges to recover same." "And in order to secure the payment of this note, I do hereby convey unto S. M. Rice, E. U., the following articles of personal property, to wit: The above described piano and * * *.

"But on this special trust, that if I fail to pay the said debt and interest, or any part thereof, on the above specified day or days, then the said S. M. Rice, E. U., or his agent, may seize said property and sell so much as may be necessary, by public auction, for cash, at once, without giving any notice in writing or otherwise, and apply the proceeds of such sale to the expenses of the seizure and sale, also ten per cent. for collector's fee, and then to the discharge of said debt, and interest on same, and pay any surplus to me."

The contract is dated the 2d of May, 1912.

In the case of *Blackwell* v. *Mortgage Co.,* 65 S. C. 105, 43 S. E. 395, the Court used this language:

"If the company had strenuously endeavored to invent a scheme by which it could escape all liability growing out of

the acts of those agents whom necessity compelled it to employ in conducting the business of making loans, we are satisfied that it could not have devised one more nearly accomplishing this purpose."

And in the present case, if the vendor had strenuously endeavored to devise a scheme by which all rights and remedies were to be in his favor, we are satisfied that he could not have invented one more nearly accomplishing this purpose.

The question is not whether the contract must be construed as a mortgage, or as a conditional sale, but whether the vendor is estopped from resorting to the remedy applicable to a mortgage, after resorting to the remedy appropriate to a conditional sale, especially when such action would be prejudicial to the rights of the vendee.

The rule in such cases is thus stated in *Am. Process Co.* v. *Fla. Pressed Brick Co.,* 56 Fla. 116, 47 South. 942, 16 Ann. Cas. 1054:

"Where property is sold on credit, and the title thereto retained by the vendor, upon a breach of the conditions of the sale the vendor may either treat the sale as absolute, and sue for the price thereof, or he may treat the sale as canceled and recover the property; but the vendor cannot pursue both courses, and the election to pursue either one of two inconsistent remedies may in law operate as an abandonment or a waiver of the other. The vendor may elect between inconsistent remedies, but he may not pursue inconsistent remedies for the enforcement of his property rights."

Again the Court says:

"If the allegations of facts necessary to support one remedy are substantially inconsistent with those necessary to support the other, then the adoption of one remedy waives the right to the other. A party will not be permitted to enforce wholly inconsistent demands respecting the same right. It is not permissible to both approbate and reprobate in asserting the same right in the Courts."

Many decisions are then cited to sustain this proposition. In a note to that case it is said:

"The recent authorities generally hold that, where property is sold on credit, and the title thereto is retained by the vendor, the latter upon a breach of the conditions of the sale, either may treat the sale as absolute and sue for the price thereof, or may treat the sale as canceled and recover the property."

Numerous authorities are cited to sustain this proposition.

The rule is thus announced in 9 R. C. L. 958:

"The doctrine of election of remedies applies only when there are two or more remedies, all of which exist at the time of election, and which are alternative and inconsistent with each other, and not cumulative, so that after the proper choice of one the other or others are no longer available. This is upon the theory that of several inconsistent remedies the pursuit of one necessarily involves or implies the negation of the others. Whether coexistent remedies are inconsistent is to be determined by a consideration of the relation of the parties, with reference to the right sought to be enforced, as asserted in the pleadings."

It may reasonably be inferred from the testimony that the vendor retook the piano in the spring or early summer of 1913, although he did not actually remove it until January, 1915, and that he intended to exercise his option of "taking the same back or claiming the whole purchase money." If such was his intention, he was estopped thereafter from resorting to the remedy applicable to a mortgage, as such remedies are inconsistent.

Judgment reversed, and new trial granted.